UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------x
UNITED STATES OF AMERICA,

        Respondent,

   -against-                                  3:09CR00224 (JCH)

HEATHER BLISS,

        Petitioner-Defendant
------------------------------------------------x

## DECLARATION IN SUPPORT OF BAIL PENDING APPEAL

### 1. Introduction

Heather Bliss is a 38 mother of three young daughters and is due to give birth to a fourth child in September. Though Ms. Bliss has always accepted full responsibility for her misconduct in this case, there is no dispute that her husband William Trudeau was viewed by the government and this Court as the mastermind of the crimes charged in this case. Trudeau proceeded to trial and was convicted of conspiracy to commit bank and wire fraud and one count of wire fraud. On February 12, 2013, he was sentenced by this Court to a term of imprisonment of 188 months. In contrast, Ms. Bliss pled guilty to conspiracy to commit wire fraud pursuant to a

1

plea agreement. In addition, she entered into a cooperation agreement with the government and provided truthful and comprehensive information which led to the prosecution of attorney John Bryk. Though Bryk was under investigation when Ms. Bliss began cooperating, the government lacked sufficient evidence to prosecute him. With the information provided by Ms. Bliss, the government was able to prosecute Bryk who pled guilty, cooperated with the government, and was instrumental in the prosecution and conviction of Trudeau.

On February 12, 2013, the same date her husband was sentenced, Ms. Bliss was sentenced by this Court to a term of imprisonment of 30 months. A timely notice of appeal was filed on her behalf. At the time of her sentencing, Ms. Bliss was unaware that she was pregnant with her fourth child. She is currently scheduled to surrender to the United States Marshal Service by July 17, 2013 to begin serving her term of imprisonment.

Given Ms. Bliss' background and current personal circumstances, there is absolutely no risk of flight posed and no danger to the community that would result from her continued release from custody pending the disposition of her appeal to the United States Court of Appeals for the Second Circuit. Furthermore, there is support in the record in this case to indicate that the sentence Ms. Bliss received may be ruled procedurally and substantively unreasonable and that there is a substantial likelihood

that the Court of Appeals will vacate her sentence when it considers her appeal on the merits. In addition, if Ms. Bliss is not permitted to remain at liberty during the pendency of her appeal, it is very likely that she will have served a substantial portion of her sentence of imprisonment by the time her appeal is decided. Under the circumstances, it is respectfully submitted that Ms. Bliss' release during the pendency of her appeal is warranted.

## 2. Background of the Case

The offense in this case arose out of a series of mortgage frauds orchestrated by Ms. Bliss' husband William Trudeau and other co-conspirators between 2005 and 2010. In broad terms, Trudeau defrauded several individuals and financial institutions in his purchases of various properties and in securing mortgages on those properties. Though Ms. Bliss had no prior legal training, her husband assisted her in obtaining employment as a legal assistant with attorney Joseph Kriz who subsequently helped Trudeau carry out a number of his fraudulent schemes. Ms. Bliss assisted her husband in a few of his schemes by overstating her income and withholding the source of a down payment on a mortgage application on the home she occupied with her husband and children, omitting her property ownership and mortgage debt from her applications for mortgages on other properties, claiming on

another mortgage application that she would be residing in the subject premises in order to obtain a more favorable interest rate and overstating her income and omitting her indebtedness on another property.

For her participation in the offense masterminded by her husband, Ms. Bliss was indicted on October 9, 2009 and charged with conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349 and three counts of bank fraud in violation of 18 U.S.C. § 1344. Following negotiations by her trial counsel, on July 30, 2010, she entered into a cooperation agreement with the government and executed a plea agreement in which she pled guilty to a substitute information charging her with conspiracy to commit wire fraud in violation of 18 U.S.C. § 371.

### 3. Heather Bliss' Cooperation

Pursuant to her cooperation agreement, Ms. Bliss provided the government with truthful and reliable information regarding her activities and those of others. Specifically, she described how attorney Bryk purposefully omitted information regarding a seller-financed balloon mortgage on a HUD-1 form to deceive the primary mortgage lender. This information enabled the government to prosecute Bryk who pled guilty and cooperated. As noted, Bryk testified at the trial of Ms. Bliss' husband and was instrumental in securing Trudeau's conviction.

### 4. Heather Bliss' Family Circumstances

Ms. Bliss is the loving mother of three daughters: nine year old Lillian, six year old Ella and two year old Hazelle. She is due to give birth to a fourth child on September 21, 2013. However, since all three of her previous births were by Cesarean delivery, her obstetrician anticipates that her fourth child will be born by Cesarean delivery within two weeks prior to her due date.

In addition to raising her own daughters, Ms. Bliss assumed parental responsibilities for her two maternal half-sisters, Emilie Blaine and Kaeli Blaine. In 2000 when she was herself only 25 years old, Ms. Bliss became the custodial guardian of Emilie and Kaeli who were then nine and seven years old respectively. Both girls have suffered from emotional disorders. Despite these challenges, Ms. Bliss opened her home to the girls for eight years, providing them with a loving and stable environment.

Ms. Bliss faces even greater challenges now. With her husband serving a sentence of imprisonment of 188 months, three young daughters, a child on the way, and a sentence of imprisonment scheduled to commence in a matter of weeks, Ms. Bliss is living in an absolute state of dread, not for herself but for her family. In fact, she is crippled with distress and anxiety. She has had to raise her children without their father for the past 23 months. She has had to tell her children about these

traumatic circumstances by herself, while providing them with much needed love, support and security. In addition, her obstetrician has expressed concerns that Ms. Bliss' delivery in September is likely to be complicated by abdominal adhesions and scar tissue and because, at age 38, she is considered to be at an "advanced maternal age".

A more immediate concern is the well-being of her three young daughters. Since Ms. Bliss has no relatives who regularly reside in Connecticut where she has always lived, and nobody in her area who can care for three young children for such an extended period of time, her daughters will have to move in with friends from a local church who reside in a different town where the children currently attend school. At the same time, Ms. Bliss will have to rely on extended family members and friends who live locally to assist her family in taking care of the girls as needed during weekdays, weekends and school vacations. It is difficult to predict which of the three girls will be most traumatized by their mother's absence but there is no doubt that it will have a negative impact on all of them. Since their father has been incarcerated for almost two years, Ms. Bliss has been raising the girls by herself. Two year old Hazelle has never been apart from Ms. Bliss for even a single day.

## 5. The Presentence Objections & Memorandum

In the presentence report ("PSR") prepared by the Probation Department, the loss from Ms. Bliss' offense was calculated to be $4,260,008 which included losses on a number of properties with which she had little or no involvement. With a base offense level of 6, an 18-level increase based on the calculated loss, a 2-level increase because the offense allegedly involved more than 10 victims, a 2-level increase because Ms. Bliss allegedly derived more than $1,000,000 in gross receipts from financial institutions, and a 2-point decrease for acceptance of responsibility, the PSR determined that her total offense level was 26 which yielded a Guidelines range of 60 months' imprisonment with a criminal history category I. However, the PSR acknowledged that the plea agreement executed by Ms. Bliss provided that the total offense level was 20, which yielded a Guidelines range of 33 to 41 months' imprisonment.

In a letter memorandum dated January 9, 2013, defense counsel sharply contested the PSR calculations. He argued that Ms. Bliss had no involvement in the financial transactions involving several of the properties in question and that the losses on those properties should not have been included because the transactions did not qualify as relevant conduct. He also contended that no losses had been generated with respect to some of the other properties with which her husband had dealt and

7

that the 10 victims increase and the $1,000,000 gross receipts increase had not been established. Accordingly, defense counsel argued that the total loss generated by Ms. Bliss' offense was only $38,700; that pursuant to U.S.S.G. § 2B1.1(a)(2), the actual loss should only increase her offense level by 6 levels, and that her total offense level should only be 10, which yielded a Guidelines range of 6 to 12 months' imprisonment.

### 6. The § 5K1.1 Motion

Prior to sentencing, the government submitted a motion pursuant to U.S.S.G. § 5K1.1. In that motion, the government noted that Ms. Bliss had provided substantial assistance as contemplated in the Guidelines and statutory authority. Specifically, the information furnished by Ms. Bliss had enabled the prosecution of attorney John Bryk who then pled guilty and assisted the government by testifying against Ms. Bliss' husband at his trial and assuring his conviction.

### 7. The Sentencing

Ms. Bliss appeared for sentencing on February 12, 2013, unaware that she was pregnant. Following a lengthy colloquy, in which defense counsel again contested the loss attributable to Ms. Bliss, this Court adopted the PSR finding that

8

the loss was $4,260,008, which yielded a total offense level of 26. With a criminal history category I, the Guidelines range was determined to be 63 to 78 months' imprisonment. However, that range was reduced to the statutory maximum sentence of 60 months' imprisonment. And while this Court stated that it was not going to grant a downward departure to give effect to the plea agreement which had calculated Ms. Bliss' total offense level as 20, it did indicate that it would, in the exercise of its discretion, consider that calculation in determining her sentence.

Prior to the imposition of sentence, Ms. Bliss' father Charles Bliss addressed this Court and explained the sacrifices he and other family members would have to make to care for Ms. Bliss's children in the event she were incarcerated for any period of time. When Ms. Bliss addressed this Court, she stated that she was truly sorry for her offense and that she accepted full responsibility for her actions. She also expressed her heartbreak at the thought of being apart from her daughters. When defense counsel spoke, he reminded this Court of Ms. Bliss' truthful cooperation, the enormous role her husband had played in leading her into the commission of her offense and the extraordinary family circumstances that warranted a lenient sentence.

This Court acknowledged the enormous impact Ms. Bliss' incarceration would have on her children, but declined to grant a downward departure on that basis.

However, the motion for a downward departure based upon Ms. Bliss' substantial assistance was granted. At the same time, this Court expressed concern that despite his incarceration, Ms. Bliss' husband would continue to exert influence over her and that she might assist him in committing fraudulent acts in the future. This Court then sentenced Ms. Bliss to a term of imprisonment of 30 months, to be followed by a three year term of supervised release. She was also ordered to pay a fine of $12,500 and restitution in the sum of $38,700.

### 8. Reasons for Granting Bail Pending Appeal

Pursuant to 18 U.S.C. § 3143 (b) (1), the court shall order detention during the pendency of an appeal absent a finding by clear and convincing evidence that: (1) the defendant does not pose a risk of flight or a danger to others; (2) the "appeal is not for the purpose of delay", and (3) the appeal presents "a substantial question of law or fact likely to result in" a reversal, an order for a new trial or no imprisonment beyond time already served. It is submitted that Ms. Bliss meets all three of the foregoing criteria for release during the pendency of her appeal and that her continued release on the bail conditions previously set should be ordered.

### a. Ms. Bliss Poses No Risk Of Flight Or Danger To Others

Since the time of her arrest for the charges in this case on October 8, 2009, Ms. Bliss has never given the slightest indication that she posed a risk of flight

or danger to others. In the course of the proceedings in this case, she appeared in court on each and every occasion which was required. In addition, she complied with every condition contained in her cooperation agreement with the government. In light of her previous conduct, there is no reason to believe that she will not continue to comply with any and all conditions of her release.

Moreover, even if it could be contended that her sentence of imprisonment heightened Ms. Bliss' risk of flight, her current circumstances undermine such a conclusion. As noted, Ms. Bliss is the mother of three daughters, ages two, six and nine. Since her husband has been incarcerated, Ms. Bliss has assumed the role of a single parent and has been raising her daughters by herself. She will certainly not engage in any conduct that might disrupt the lives of her two older daughters who will be returning to school at the end of the summer. And she would never do anything to jeopardize the well-being of her youngest daughter who has not been away from her mother since the day she was born.

Ms. Bliss' pregnancy is another factor that refutes any notion that she might pose a risk of flight. With a due date to give birth to a fourth child in September, and a potentially difficult Cesarian section delivery scheduled, it is unlikely that Ms. Bliss will be traveling anywhere for the foreseeable future, except for occasional visits to her physician.

In short, there is absolutely no reason to believe that Ms. Bliss poses a risk of flight or a danger to others. Therefore, it is clear that she satisfies this portion of 18 U.S.C. § 3143 (b) (1).

### b. The Appeal Is Not For The Purpose Of Delay

There is no basis for contending that Ms. Bliss is appealing for the purpose of delaying the final disposition of her case. The plea agreement that she entered into with the government provided that she would be entitled to challenge her sentence so long as it exceeded 13 months' imprisonment. Since this Court imposed a sentence of 30 months' imprisonment, Ms. Bliss is certainly entitled to challenge the reasonableness of her sentence in the United States Court of Appeals for the Second Circuit.

There is no indication from the record of the proceedings in this Court that Ms. Bliss ever engaged in any actions designed to delay the disposition of her case. She did not switch attorneys throughout the pendency of her case. In fact, immediately after her arrest, she retained the services of attorney Andrew B. Bowman who continued to represent her through the sentencing. Moreover, it appears that after Mr. Bowman filed the notice of appeal, Ms. Bliss acted diligently in seeking the appointment of counsel to represent her on her appeal. Thus, it cannot be concluded that Ms. Bliss has exhibited a pattern of delay in this case.

Moreover, as will be set forth in greater detail in Sect. 8 (c) herein, Ms. Bliss has meritorious grounds to challenge the reasonableness of the sentence imposed by this Court. A substantial challenge to the loss determination is likely to be raised on appeal. Ms. Bliss' exceptional family circumstances may also raise a question regarding the soundness of this Court's sentencing determination. In any event, it cannot be contended that Ms. Bliss' appeal is either frivolous or calculated to delay the disposition in this case.

### c. Ms. Bliss' Appeal Presents Substantial Questions Of Law Likely To Result In No Imprisonment Beyond Time Already Served

The determination of the loss in this case was neither stipulated to nor admitted by Ms. Bliss. In fact, counsel for Ms. Bliss vigorously objected to that determination. Since establishing the facts that led to the loss determination had the effect of violating Ms. Bliss' Sixth Amendment right to have those facts determined by a jury, there is a strong basis for concluding that the sentence imposed, which was driven in large part by the loss determination, was procedurally unreasonable.

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that the Sixth Amendment requires all "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" be submitted to a jury and proved beyond a reasonable doubt. *Id.* at 490. In *Alleyne v. United States*, __ U.S. __,

Docket No. 11-9335 (decided June 17, 2013), the Supreme Court revisited *Apprendi*, overruled the decision in *Harris v. United States*, 536 U.S. 545 (2002) and held that the Sixth Amendment requires a jury to find all facts that fix the penalty range of a crime. And contrary to what the Court held in *Harris*, the mandatory minimum sentence is just as important to the statutory range as the statutory maximum.

The same rationale that formed the basis for the Supreme Court's decision in *Alleyne* would support a vacatur of Ms. Bliss' sentence on appeal. The offense to which Ms. Bliss pled guilty carried a base offense level of 6 with no mandatory minimum term of imprisonment. Even if defense counsel's argument that the loss was $38,700 were viewed as a stipulation, the total offense level would have only been 10 with a Guidelines range of 6 to 12 months' imprisonment.

In light of the fact that the Guidelines range that this Court used in determining Ms. Bliss' sentence was based on a determination that was neither stipulated to nor found by a jury beyond a reasonable doubt, it cannot be concluded that the sentence imposed was procedurally reasonable. *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008). In any event, there is certainly a substantial question of law likely to result in an order for no imprisonment beyond the time Ms. Bliss will probably have served by the time her appeal is ultimately decided. For this reason, she should be permitted to remain at liberty during the pendency of her appeal.

Ms. Bliss' extraordinary family circumstances pose another substantial question of law likely to result in a reduction of the sentence she received. Though this Court considered and rejected Ms. Bliss' family ties and responsibilities as a ground for a downward departure, it is not entirely clear whether any consideration was given to those responsibilities under 18 U.S.C. § 3553 (a) (1) which requires sentencing judges to consider "the history and characteristics of the defendant". Given the tender ages of Ms. Bliss' three daughters, her current pregnancy, and the hardships that will be borne by her friends and family members who will be assuming the responsibility of caring those children during her term of incarceration, there is strong support for the conclusion that Ms. Bliss' extraordinary family circumstances were not adequately considered in determining her sentence. At the very least, there is a substantial question of law likely to result in an order imposing no imprisonment beyond the time Ms. Bliss has already served.

In sum, for all of the reasons stated herein, it is respectfully urged that Ms. Bliss' release from custody be continued during the pendency of her appeal to the United States Court of Appeals for the Second Circuit.

Dated:     Bayside, New York
           July 1, 2013

Respectfully submitted,

Randall D. Unger
Attorney for Heather Bliss